IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MEREANE CARLISLE, et al.,      )      CIVIL 14-00363 LEK-KSC
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
USPLABS, LLC, et al.,          )
                               )
          Defendants.          )
_____)


**ORDER GRANTING DEFENDANT S.K. LABORATORIES, INC.'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

          Before the Court is Defendant S.K. Laboratories, Inc.'s

("S.K.") Motion to Dismiss or, in the Alternative, for Summary

Judgment ("Motion"), filed on December 30, 2014. [Dkt. no. 16.]

Plaintiffs Mereane Carlisle, Charles Paio, Chanelle Valdez,

Janice Fevella, and Christiano Mariano (collectively

"Plaintiffs") filed their memorandum in opposition on February 2,

2015.[1] [Dkt. no. 29.] S.K. filed its reply on March 30, 2015.

[Dkt. no. 122.] This matter came on for hearing on April 13,

---

          [1] Pursuant to this Court's order, [Order Regarding Hearing
on Defendant S.K. Laboratories, Inc.'s Motions to Dismiss, filed
1/13/15 (dkt. no. 23) ("1/13/15 EO"),] Plaintiffs filed a joint
memorandum in opposition with the plaintiffs in Davidson, et al.
v. USPlabs, LLC, et al., CV 14-00364 LEK-KSC, Ofisa, et al. v.
USPlabs, LLC, et al., CV 14-00365 LEK-KSC, Pantohan, et al. v.
USPlabs, LLC, et al., CV 14-00366 LEK-KSC, and Pavao, et al. v.
USPlabs, LLC, et al., CV 14-00367 LEK-KSC. The plaintiffs in
these cases raise the same claims, and are represented by the
same counsel. S.K. filed a motion to dismiss in each case. This
Court therefore set the five motions for hearing on the same day
and directed the parties to file joint memoranda. This Court
will issue separate orders ruling on each of the five motions.

2015.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, S.K.'s Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiffs filed the underlying Complaint in this district court on August 15, 2014, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332.  [Complaint at ¶ 1.]

Each Plaintiff is a Hawai`i resident who ingested one or more of the following versions of a dietary supplement – OxyElite Pro Super Thermo, OxyElite Pro New Formula,[2] or OxyElite Pro Super Thermo Powder (collectively "the Product") – between May through November of 2013, after purchasing it from a GNC or Vitamin Shoppe store located within the State of Hawai`i.  [Id. at ¶¶ 41-65.]  Plaintiffs allege that, after ingesting the Product, they suffered acute liver failure and/or hepatitis related injuries.  Plaintiffs claim that they were exposed to, and relied upon the advertising and marketing of Defendants USPlabs, LLC ("USPlabs"), The Vitamin Shoppe ("VS"), or GNC Corporation ("GNC"), and believed the Product to be safe for consumption and effective in use.[3]  [Id.]  Plaintiffs allege that

---

[2] Plaintiffs refer to products named "OxyElite Pro Ultra Intense Thermo," "OxyElite Pro Super Thermo," and "OxyElite Pro Super Thermo Powder" collectively as "OxyElite Pro New Formula." [Complaint at ¶ 3.]

[3] The following are named Defendants in all five cases:
(continued...)

2

USPlabs regularly engaged in the business of producing and distributing the Product to retail stores in Hawai`i, which led to Plaintiffs purchasing and ingesting the Product in the state of Hawai`i. [Id. at ¶ 3-4.] For further discussion of the allegations regarding USPlabs, see Van Houten v. USPlabs, LLC, Civ. No. 13-00635 LEK-KSC, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Plaintiff's Complaint, 2014 WL 4956498 (D. Hawai`i Sept. 30, 2014).

S.K. is a contract manufacturer of the Product. [Complaint at ¶ 28.] Plaintiffs allege that:

> There are three versions of the new OxyElite product including: OxyElite Pro Ultra Intense Thermo, OxyElite Pro Super Thermo, and OxyElite Pro Super Thermo Powder (collectively "OxyElite Pro New Formula"). OxyElite Pro Super Thermo is a trademarked product designed, marketed, manufactured, distributed and sold by USP, either directly or at the direction and behest of USP. USP contracts with [S.K.] who in turn contracts with VITA-TECH, both of which manufacture OxyElite Pro New Formula at the direction of and using specifications set forth by USP. OxyElite Pro Super Thermo contains the following ingredients in its Proprietary Blend: Bauhinia Purpurea L. (Leaf

---

[3](...continued)
USPlabs; Jonathan Vincent Doyle (an individual); Jacob Geissler (an individual), also known as Jacobo Geissler; USPlabs OxyElite, LLC; USPlabs OxyElite PN, LLC; GNC; VS; Vitamin Shoppe Industries Inc.; S.K.; and Vita-Tech International, Inc. Similar claims against many of the same defendants been alleged in other cases pending in this district court. These include: Van Houten v. USPlabs, LLC, CV 13-00635 LEK-KSC; Waikiki v. USPlabs, LLC, et al., CV 13-00639 LEK-KSC; Akau v. USPlabs, LLC, et al.; CV 14-00029 LEK-KSC; Igafo v. USPlabs, LLC, et al., CV 14-00030 LEK-KSC; Ishihara v. USPlabs, LLC, et al., CV 14-00031 LEK-KSC; and Mattson v. USPlabs, LLC, et al., CV 14-00032 LEK-KSC.

and Pod) Extract, Aegeline, Norcoclaurine HCL, Hemerecallis Fulva (Flower) Heat Concentrated Extract, Yohimbe (Pausinystalia Johimbe) (Bark) Extract (AlphaShred). It also contains caffeine.

[Id. at ¶ 60.]

S.K. is a California corporation, with its headquarters in Anaheim, California, whom Plaintiffs allege was:

> regularly engaged in the business of manufacturing, formulating, packaging, distributing, designing and/or selling, either directly or indirectly, through third parties of related entities, non-prescription dietary supplement for sale to, and use by, members of the general public, and as a part of their business, said Defendant, directly or indirectly was and is engaged in the manufacturing/formulating/ packaging/distributing/designing/selling of a purported nutritional/dietary supplement under the proprietary, trademarked name OxyElite Pro New Formula in interstate commerce and in Hawaii, which Plaintiffs ingested as alleged herein.

[Id. at ¶ 28.] Plaintiffs further allege that, at all times, the actions of individuals employed by S.K. were done on behalf of, at the direction of, and ratified by S.K. in accordance with S.K.'s company policy. [Id. at ¶ 29.]

Plaintiffs allege that all versions of the Product are "dangerous and untested dietary supplements that causes hepatic injuries, ranging from acute, mild liver dysfunction to hepatitis and liver failure requiring liver transplantation, or death." [Id. at ¶ 72.] USPlabs developed the Product while it was phasing out a prior formulation of the Product, which contained 1,3-Dimethylamylamine, a dangerous chemical ("OxyElite with

DMAA"). [Id. at ¶¶ 75-90.[4]] Plaintiffs allege that USPlabs failed to learn its lesson from the previous sale of OxyElite with DMAA, and did not adequately test the safety of the Product at issue in this litigation. USPlabs included phrases such as "Scientifically Formulated" and "Pharmacist Formulated" on certain versions of the Product that Plaintiffs allege "mislead[] consumers in believing that the individual ingredients used have been thoroughly investigated and are demonstrated to be safe, when in fact, the ingredients have not been adequately tested for safety." [Complaint at ¶ 34.]

On October 8, 2013, due to a number of reports related to liver injuries related to use of the Product in Hawai`i, the United States Food and Drug Administration ("FDA") issued a Health Advisory warning consumers to stop using the Product. [Complaint at ¶ 95.] The advisory noted "29 cases of non-viral hepatitis in which other causes had been ruled out. Of those, 24 were reported to be on an OxyElite Pro New Formula product. Two of the cases had liver transplants, one person died and 11 were hospitalized." [Id.] According to the Complaint, the number of confirmed cases of liver injuries in Hawai`i related to the use of the Product is now twenty seven. [Id. at ¶ 96.] The Product

_____

[4] For further discussion of the allegations regarding OxyElite with DMAA, see Akau v. USPlabs, LLC, et al., CV 14-00029 LEK-KSC, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, filed 9/9/14 (dkt. no. 44) at 5-6.

contained ageline, a new, synthetic ingredient.  On October 11,
2013, the FDA issued a warning letter to USPlabs that this
ingredient "lacked evidence of safety" and that the various
formulations of the Product were "deemed adulterated because they
contain a new dietary ingredient (an ingredient not previously
present in the food supply, and for which there is no history of
use or other evidence of safety when used as suggested in the
labeling) which lacks adequate information to provide reasonable
assurance of safety."  [Id. at ¶ 97.]  By letter dated
November 6, 2013, the FDA also notified USPlabs about the
correlation between the Product and a number of liver illnesses
reported in Hawai`i, as well as related occurrences in other
states.  [Id.]

        Even though USPlabs received warnings about the effects
of the Product, GNC continued to market it and did not remove it
from its shelves until an embargo in October 2013 and after
further threats from the State of Hawai`i Department of Health.
[Id. at ¶ 98.]  Following the FDA's letter dated November 9,
2013, warning USPlabs that it would take all enforcement actions
against the Product, USPlabs finally initiated a full-scale
recall of all three versions of the Product.  As a part of the
recall, USPlabs conceded that the Product was hepatotoxic.  [Id. at
¶ 100.]

USPlabs has raised the possibility that customers who suffered liver injuries had ingested a counterfeit product. Plaintiffs, however, argue that there is no evidence of any existing counterfeit version of the Product, nor has the FDA found any substantiation for such a claim. [Id. at ¶ 99.]

Plaintiffs allege in the Complaint that USPlabs failed to follow current good manufacturing practices ("CGMP") in its facilities according to the FDA.[5] USPlabs's manufacturers, including S.K., were also cited by the FDA for similar CGMP violations. [Id. at ¶ 106.] Plaintiffs allege that these violations of both CGMP and federal law placed consumers at risk for "exposure to untested, contaminated ingredients," and that "there are issues of contamination in [the Product], which are in part of in the alternative wholly responsible for Plaintiff's injuries." [Id. at ¶ 107.]

Plaintiffs allege the following claims: negligence against the USP Defendants ("Count I"); negligence against GNC and VS (collectively, "the Retailers"[6] and "Count II");

---

[5] On December 4, 2012, the USP entities received a letter notifying it of its CGMP violations following a two-week inspection of USPlabs's facilities. The FDA noted that USPlabs failed to: create a pure product free of contaminants, or to test for any contaminants; review formulas for quality control; and test raw ingredients used in its products before sending them to third-party manufacturers. [Complaint at ¶ 105.]

[6] Plaintiffs Fevella, Mariano, and Valdez's claims against the Retailers are against GNC, and Plaintiffs Carlisle and Paio's
(continued...)

negligence against S.K. and Vita-tech (collectively, "the
Manufacturers" and "Count III"); strict products liability -
manufacturing defect against USPlabs ("Count IV"); strict
products liability - manufacturing defect against the Retailers
("Count V"); strict products liability - manufacturing defect
against the Manufacturers ("Count VI"); strict products liability
- design defect against USPLabs and ("Count VII"); strict
products liability - design defect against the Retailers ("Count
VIII"); strict products liability - design defect against the
Manufacturers ("Count IX"); strict products liability - failure
to warn against USPLabs ("Count X"); strict products liability -
failure to warn against the Retailers ("Count XI"); strict
products liability - failure to warn against the Manufacturers
("Count XII"); breach of implied warranty against USPlabs ("Count
XIII"); breach of implied warranty against the Retailers
("Count XIV"); and breach of implied warranty against the
Manufacturers ("Count XV"). [Id. at ¶¶ 108-233.]

    The Complaint also includes specific allegations in
support of Plaintiffs' request for punitive damages against
USPlabs, and Plaintiffs Fevella, Mariano, and Valdez's request
against GNC.[7] [Id. at ¶¶ 234-44.] Plaintiffs ask for punitive

_____

    [6](...continued)
claims are against VS. See Complaint at ¶¶ 45, 50, 55, 60, 65.

    [7] Plaintiffs Carlisle and Paio apparently do not seek
                                        (continued...)

damages and treble damages as to Counts IV, V, VII, VIII, X, XI,
XIII, and XIV.  [Id. at pg. 85, Prayer for Relief ¶ e.]

Plaintiffs pray for the following relief as to all
counts and against all Defendants, jointly and severally: damages
- including past and future medical expenses, loss of past and
future earnings and/or profits, other economic losses; non-
economic damages - including physical pain, discomfort, and
emotional distress including fright, nervousness, anxiety, worry,
and apprehension; pre-judgment and post-judgment interest;
reasonable costs; and any other appropriate relief.  [Id. at pgs.
84-85, Prayer for Relief ¶¶ a-d, f.]

In the instant Motion, S.K. moves to dismiss this case
pursuant Fed. R. Civ. P. 12(b)(2) for lack of personal
jurisdiction, or in the alternative, for summary judgment
pursuant to Fed. R. Civ. P. 56.  [Mem. in Supp. of Motion at 2.]
S.K. asserts that it is a California company with no business
presence in Hawai`i, and it has never purposefully directed any
business or marketing activity toward Hawai`i.  As such, S.K.
argues that this Court does not have personal jurisdiction over
it, and therefore this Court must dismiss Plaintiffs' claims
against it.

---

[7](...continued)
punitive damages against VS.  See Complaint at pg. 81.]

## I.   Conversion of Motion to Dismiss to Motion for Summary Judgment

S.K. filed its Motion pursuant to Rule 12(b)(2), which allows for the filing of a motion to dismiss based on "lack of personal jurisdiction." Generally, this Court's scope of review in considering a motion to dismiss is limited to the allegations in the complaint. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).[8]  However, S.K. submitted additional materials, which the Court has considered. This Court therefore finds that its necessary to treat S.K.'s motion to dismiss as a motion for summary judgment. See Yamalov v. Bank of Am. Corp., CV. No. 10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7 (D. Hawai`i, May 16, 2011) (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998)).[9]

This Court now turns to the merits of S.K.'s Motion.

## II.  Personal Jurisdiction

S.K. argues that summary judgment is proper because this Court does not have personal jurisdiction over it. This

---

[8] "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall, 629 F.3d at 998 (citations and internal quotation marks omitted).

[9] Parrino was superseded by statute on other grounds, as stated in Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 681-82 (9th Cir. 2006) (per curiam).

district court evaluates the existence of personal jurisdiction

under the following standard:

> A plaintiff has the burden of establishing
> personal jurisdiction over a nonresident
> defendant. <u>See</u> <u>Love v. Associated Newspapers,</u>
> <u>Ltd.</u>, 611 F.3d 601, 608 (9th Cir. 2010);
> <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d
> 797, 800 (9th Cir. 2004). A plaintiff must
> establish personal jurisdiction over a defendant
> with respect to each claim. <u>Action Embroidery</u>
> <u>Corp. v. Atl. Embroidery, Inc.</u>, 368 F.3d 1174,
> 1180 (9th Cir. 2004) ("Personal jurisdiction must
> exist for each claim asserted against a
> defendant." (citing <u>Data Disc, Inc. v. Sys. Tech.</u>
> <u>Assocs., Inc.</u>, 557 F.2d 1280, 1289 n.8 (9th Cir.
> 1977))).
>
> When, as here, a district court acts on a
> motion to dismiss without holding an evidentiary
> hearing, a plaintiff need only make a prima facie
> showing of jurisdictional facts to withstand the
> motion to dismiss. <u>Love</u>, 611 F.3d at 608;
> <u>Schwarzenegger</u>, 374 F.3d at 800. Although a
> plaintiff may not simply rest on the bare
> allegations of the complaint, uncontroverted
> allegations in the complaint must be taken as
> true, and conflicts between parties over
> statements contained in affidavits or declarations
> must be resolved in the plaintiff's favor. <u>See</u>
> <u>Love</u>, 611 F.3d at 608; <u>Schwarzenegger</u>, 374 F.3d at
> 800.
>
> . . . .
>
> The district court considers two factors
> before exercising personal jurisdiction over a
> nonresident defendant in a diversity of
> citizenship case: "(1) whether an applicable state
> rule or statute potentially confers jurisdiction
> over the defendant; and (2) whether assertion of
> such jurisdiction accords with constitutional
> principles of due process." <u>Flynt Distrib. Co. v.</u>
> <u>Harvey</u>, 734 F.2d 1389, 1392 (9th Cir. 1984). "The
> jurisdictional inquiries under state law and
> federal due process merge into one analysis" when,
> as here, the state's long-arm statute is "co-

extensive with federal due process requirements."
Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th
Cir. 1991).  See Cowan v. First Ins. Co. Of
Hawaii, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)
(Hawaii's long-arm statute, Haw. Rev. Stat. § 634-
35, was adopted to expand the jurisdiction of
Hawaii's courts to the extent permitted by the due
process clause of the Fourteenth Amendment). . . .

     The Due Process Clause protects a person's
"liberty interest in not being subject to the
binding judgments of a forum with which he has
established no meaningful 'contacts, ties, or
relations.'" Burger King Corp. v. Rudzewicz, 471
U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v.
Washington, 326 U.S. 310, 319 (1945)).  The Due
Process Clause requires that defendants have
"certain minimum contacts with [Hawaii] such that
the maintenance of the suit does not offend
traditional notions of fair play and substantial
justice."  Int'l Shoe, 326 U.S. at 316; Data Disc,
Inc. v. Systems Tech. Assocs., Inc., 557 F.2d
1280, 1287 (9th Cir. 1977).  The minimum contacts
required mean that the defendant must have
purposefully availed itself of the privilege of
conducting activities within the foreign
jurisdiction, thereby invoking the benefits and
protections of the foreign jurisdiction's laws.
See Asahi Metal Indus. Co. v. Sup. Court of Cal.,
480 U.S. 102, 109 (1987).  In applying Due Process
Clause requirements, courts have created two
jurisdictional concepts – general and specific
jurisdiction.

Maui Elec. Co. v. Chromalloy Gas Turbine, LLC, 942 F. Supp. 2d

1035, 1040-41 (D. Hawai`i 2013) (some alterations in Maui Elec.).

     A.   **General Jurisdiction**

     This Court first turns to whether it has general

jurisdiction over S.K..  "A court may exercise general

jurisdiction over the defendant when the defendant is a resident

or domiciliary of the forum state, or the defendant's contacts

with the forum state are continuous, systematic, and

substantial." Id. at 1041 (some citations omitted) (citing

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408,

414–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).  In other

words, a court has "general jurisdiction over foreign

(sister-state or foreign-country) corporations to hear any and

all claims against them when their affiliations with the State

are so 'continuous and systematic' as to render them essentially

at home in the forum State."  Daimler AG v. Bauman, 134 S. Ct.

746, 754 (2014) (citation and some quotation marks omitted).

     S.K. has presented evidence that it: is not a citizen

of Hawai`i; lacks any business affiliations with the Hawai`i;

does not advertise in Hawai`i; owns no bank accounts, real

property, sales offices, or sales force in Hawai`i; and does not

engage in any direct sales in Hawai`i.  [Motion, Decl. of Sitesh

Patel ("Patel Decl.") at ¶¶ 2-11.[10]]

     Plaintiffs essentially concede that S.K. has no

physical presence in Hawai`i and that S.K. lacks the minimum

contacts necessary to establish general jurisdiction.  Plaintiffs

instead argue that this Court has specific jurisdiction over S.K.

purposefully availed itself of the forum by selling the Product

in Hawai`i.  Plaintiffs argue that S.K. did not merely release

the Product into the stream of commerce, it engaged in

---

     [10] Sitesh Patel is the Vice President of S.K.  [Patel Decl.
at ¶ 1.]

"additional, routine, systematic business practice of directly shipping a significant portion of USPlabs's products directly to GNC." [Mem. in Opp. at 9.]

This Court FINDS that there are no genuine disputes of material fact and, based on the undisputed record, S.K. did not have continuous, systematic, and substantial contacts with Hawai`i. This Court therefore CONCLUDES that it does not have general jurisdiction over S.K., and that S.K. is entitled to judgment as a matter of law on the issue of general jurisdiction. See Fed. R. Civ. P. 56(a) (stating that a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

This Court now turns to whether there is specific jurisdiction.

**B. Specific Jurisdiction**

In reviewing whether a court has specific jurisdiction over a defendant, the Ninth Circuit has stated that:

> This court uses the following three-part test to analyze whether a party's "minimum contacts" meet the due process standard for the exercise of specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and

protections of its laws; (2) the claim must
be one which arises out of or relates to the
defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport
with fair play and substantial justice, i.e.
it must be reasonable

Schwarzenegger, 374 F.3d at 802. "If any of the
three requirements is not satisfied, jurisdiction
in the forum would deprive the defendant of due
process of law." Omeluk v. Langsten Slip &
Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).
While all three requirements must be met, this
court has stated that in its consideration of the
first two prongs, "[a] strong showing on one axis
will permit a lesser showing on the other."
Yahoo! Inc. v. La Lique Contre Le Racisme Et
L'Antisemitisme, 433 F.3d 1199, 1210 (9th Cir.
2006) (en banc). That means that a single forum
state contact can support jurisdiction if the
cause of action arises out of that particular
purposeful contact of the defendant with the forum
state. Id. (citing Lake v. Lake, 817 F.2d 1416,
1421 (9th Cir. 1987)). . . . This court has
referred to the second prong of the specific
jurisdiction test as a "but for" test. See Shute
v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th
Cir. 1990), rev'd on other grounds, Carnival
Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.
Ct. 1522, 113 L. Ed. 2d 622 (1991). Under the
"but for" test, "a lawsuit arises out of a
defendant's contacts with the forum state if a
direct nexus exists between those contacts and the
cause of action." Fireman's Fund Ins. Co. [v.
Nat'l Bank of Coops.], 103 F.3d [888,] 894 [(9th
Cir. 1996)]. . . .

In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d

716, 741-42 (9th Cir. 2013) (some alterations in Western States).

"Once the Plaintiffs have shown that the exercise of personal

jurisdiction satisfies the first two prongs of the personal

jurisdiction test, the burden shifts to the defendant to make a

'compelling case' that the exercise of jurisdiction would be

unreasonable." Id. at 745 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–77, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

The Court finds that, even viewing the record in the light most favorable to Plaintiffs, S.K.'s actions do not sufficiently meet the three-prong test for specific jurisdiction. See Maui Elec., 2015 WL 1442961, at *4 (stating that, in considering a motion for summary judgment, "[a]ll evidence and inferences must be construed in the light most favorable to the nonmoving party" (citing T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987))). First, Plaintiffs have failed to show how S.K. has "purposefully avail[ed] [it]self of the privilege of conducting activities in the forum." See id. at 741-42.

The Ninth Circuit has stated that a plaintiff may satisfy the first prong by:

> demonstrating that the defendant either
> purposefully availed itself of the privilege of
> conducting activities in the forum, or
> purposefully directed its activities at the forum.
> We have explained that although we have sometimes
> used these two terms in shorthand fashion as a
> single concept, they "are, in fact, two distinct
> concepts." Schwarzenegger, 374 F.3d at 802. We
> have further explained that "[a] purposeful
> availment analysis is most often used in suits
> sounding in contract." Id.; see also Burger King,
> 471 U.S. at 473, 475-76, 105 S. Ct. 2174; Hanson
> v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2
> L. Ed. 2d 1283 (1958). By contrast, "[i]n tort
> cases, we typically inquire whether a defendant
> 'purposefully direct[s] his activities' at the

16

forum state, applying an 'effects' test that
focuses on the forum in which the defendant's
actions were felt, whether or not the actions
themselves occurred within the forum." Yahoo!
Inc. v. La Lique Contre Le Racisme, 433 F.3d 1199,
1206 (9th Cir. 2006) (en banc).

The "purposeful direction" or "effects" test
is based on Calder v. Jones, 465 U.S. 783, 104
S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  It
"requires that the defendant . . . have (1)
committed an intentional act, (2) expressly aimed
at the forum state, (3) causing harm that the
defendant knows is likely to be suffered in the
forum state." Mavrix Photo[, Inc. v. Brand
Techs., Inc.], 647 F.3d [1218,] 1228 [(9th Cir.
2011)] (internal quotation marks omitted).  Thus,
courts may exercise personal jurisdiction over a
defendant who engages in an intentional act that
causes harm in the forum state, even if that act
takes place outside of the forum state.  See
Yahoo! Inc., 433 F.3d at 1206; Panavision [Int'l,
L.P. v. Toeppen], 141 F.3d [1316,] 1320 [(9th Cir.
1998)] ("It is not required that a defendant be
physically present or have physical contacts with
the forum, so long as his efforts are
'purposefully directed' toward forum residents.").

Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672-73

(9th Cir. 2012) (some alterations in Wash. Shoe) (footnote

omitted).

Plaintiffs allege in their Complaint that S.K.

purposefully availed itself of the benefits of conducting

business in Hawai`i when it placed the Product into the stream of

commerce, where it was foreseeable that it would reach Hawai`i

through GNC's retail chain.  However, Defendants presented

evidence S.K. lacked any business connections with Hawai`i.  See

Patel Decl. at ¶¶ 2-11.  They also argue that Plaintiffs cannot

satisfy the more stringent stream of commerce "plus" theory of
purposeful direction toward the forum state.  See Asahi Metal
Indus. Co. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102,
112 (1986) (O'Connor, J.).[11]  Plaintiffs have also been unable to
point to any specific actions pursuant to the Calder test.  While
S.K.'s manufacturing of the Product was intentional, Plaintiffs
have failed to show that S.K. "expressly aimed" the Product at
Hawai`i, or that S.K. knew - or reasonably should have known -

---

[11] In Asahi, Justice O'Connor stated:

> The "substantial connection," Burger King, 471
> U.S., at 475, 105 S. Ct., at 2184, between the
> defendant and the forum State necessary for a
> finding of minimum contacts must come about by an
> action of the defendant purposefully directed
> toward the forum State.  Burger King, supra, 471
> U.S., at 476, 105 S. Ct., at 2184; Keeton v.
> Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.
> Ct. 1473, 1478, 79 L. Ed. 2d 790 (1984).  The
> placement of a product into the stream of
> commerce, without more, is not an act of the
> defendant purposefully directed toward the forum
> State.  Additional conduct of the defendant may
> indicate an intent or purpose to serve the market
> in the forum State, for example, designing the
> product for the market in the forum State,
> advertising in the forum State, establishing
> channels for providing regular advice to customers
> in the forum State, or marketing the product
> through a distributor who has agreed to serve as
> the sales agent in the forum State.  But a
> defendant's awareness that the stream of commerce
> may or will sweep the product into the forum State
> does not convert the mere act of placing the
> product into the stream into an act purposefully
> directed toward the forum State.

480 U.S. at 112 (some citations omitted).

that its actions would result in likely harm in the forum state. S.K. denied any purposeful direction by presenting evidence that it was merely a contracted manufacturer with no agency in the sales and marketing or the Product.

The Court agrees, and finds that Plaintiffs have not met the first prong of the specific jurisdiction test.

As noted previously, the second prong is a "but for" test. <u>W. States</u>, 715 F.3d at 742. Since Plaintiffs have been unable to make a prima facie showing that the S.K. purposefully directed is activities toward Hawai`i, this Court finds that Plaintiffs cannot establish that their claims would not have arisen but for S.K.'s forum-related activities.

Finally, this Court finds that exercising specific jurisdiction over the S.K. would be unreasonable based on the current record. The Ninth Circuit has stated:

> This court considers the following seven factors in determining whether the exercise of jurisdiction would be reasonable:
>
> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

<u>Bancroft [& Masters, Inc. v. Augusta Nat'l Inc.]</u>,
223 F.3d [1082,] 1088 [(9th Cir. 2000)]. . . .

<u>W. States</u>, 715 F.3d at 745.  Because this Court has found that
S.K. has not purposefully interjected itself into the forum state
through its manufacturing responsibilities, and it has no
physical presence in Hawai`i, this Court also finds that S.K. has
presented a compelling case that the exercise of jurisdiction
over it in Hawai`i would be unreasonable.  The third and fifth
factors are considered neutral based on the parties' United
States citizenship and the advent of modern technology.[12]  The
fourth factor, however, could possibly weigh in favor of
Plaintiffs, as Hawai`i has a "strong interest in providing an
effective means of redress for its residents who are tortiously
injured."  <u>Maui Elec.</u>, 942 F. Supp. 2d at 1045 (citation and
quotation marks omitted).  Further, "[a] state generally has a
'manifest interest' in providing its residents with a convenient
forum for redressing injuries inflicted by out-of-state actors."
<u>Barranco</u>, 6 F. Supp. 3d at 1083 (citing <u>Burger King</u>, 471 U.S. at

---

[12] This Court still considers the third factor in evaluating
challenges to personal jurisdiction, however, it is not the focus
of the analysis.  <u>See</u> <u>Barranco v. 3D Sys. Corp.</u>, 6 F. Supp. 3d
1068, 1083 (D. Hawai`i 2014) ("Moreover, the sovereignty of a
defendant's state is not a significant consideration in actions
between citizens of the United States." (citations and quotation
marks omitted)).  Thus, this factor is neutral.  <u>See</u> <u>id.</u>  The
fifth factor focuses on the efficiency of judicial resolution
given the "location of the evidence and witnesses.  This factor,
however, 'is no longer weighed heavily given the modern advances
in communication and transportation.'"  <u>Maui Elec.</u>, 942 F. Supp.
2d at 1045 (citing and quoting <u>Panavision</u>, 141 F.3d at 1323-24).

473, 105 S. Ct. at 2174).  However, this general "manifest
interest" is juxtaposed with the sixth and seventh factors, which
looks to the effectiveness and availability of relief, and gives
"little weight to a plaintiff's inconvenience."  Spring Patents,
Inc. v. Avon Rubber & Plastics, Inc., 183 F. Supp. 2d 1198, 1208
(D. Hawai`i 2001) ("A court should place greater significance on
the possibility of effective relief." (citing Core-Vent Corp. v.
Nobel Indus. AB, 11 F.3d 1482, 1489 (9th Cir. 1993)).  Moreover,
the seventh factor requires Plaintiffs to show the
"unavailability of an alternative forum."  Maui Elec., 942 F.
Supp. 2d at 1045 (citing Core-Vent, 11 F.3d at 1490).  Since
Plaintiffs have not shown that their claim would be precluded in
any other forum that would provide effective relief, this Court
finds that the sixth and seventh factors do not weigh in favor of
Plaintiffs.  Even considering all of the factors in the light
most favorable to Plaintiffs, the Court finds that it would be
unreasonable to exercise specific jurisdiction.  This Court
therefore FINDS that there are no genuine disputes of material
fact as to the issue of specific jurisdiction, and CONCLUDES that
S.K. is entitled to judgment as a matter of law on that issue.

    C.  **Summary**

        Insofar as this Court has ruled that it has neither
general jurisdiction nor specific jurisdiction over S.K., this

Court CONCLUDES that it does not have personal jurisdiction over S.K.

**CONCLUSION**

On the basis of the foregoing, S.K.'s Motion to Dismiss or, in the Alternative, for Summary Judgment, filed December 30, 2014, is HEREBY GRANTED.  Insofar as this Court has granted summary judgment in favor of S.K. based upon the Court's conclusion that it lacks personal jurisdiction over S.K., this Court DIRECTS the Clerk's Office to terminate S.K. as a party in this case on **May 21, 2015**, unless Plaintiffs file a motion for reconsideration of this order by **May 18, 2015**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 30, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MEREANE CARLISLE, ET AL. VS. USPLABS, LLC, ET AL.; CIVIL 14-00363 LEK-KSC; ORDER GRANTING DEFENDANT S.K. LABORATORIES, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**